UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____

|  |  |  |
|---|---|---|
| CAROLINA PENARDO, in her capacity as Administrator of the Estate of Andrea Lynn Penardo; CAROLINA PENARDO, individually; MICHAEL PENARDO; and ELIZABETH PENARDO, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 17-287 WES |
| NATIONAL RAILROAD PASSENGER CORPORATION; and JOHN DOES 1 through 10, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Before the Court is a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure filed by Defendant National Railroad Passenger Corporation ("Amtrak"). (ECF No. 5.) For the reasons set forth below, Defendant's motion is GRANTED.

I. Background

On October 16, 2016, sixteen-year-old Andrea Lynn Penardo,[1] and her sister, seventeen-year-old Elizabeth Penardo, travelled to East Greenwich, Rhode Island to take pictures of the East Greenwich waterfront. (Compl. ¶¶ 39-40, ECF No. 1-1.) Andrea and Elizabeth

_____

[1] In the interest of clarity, the Court refers to members of the Penardo family by their first names. No disrespect is intended.

were raised in West Warwick and, while they had visited East Greenwich before, they were unfamiliar with the area between Main Street and the waterfront. (Id. ¶¶ 36, 39.) To access the waterfront from Main Street, Andrea and Elizabeth walked along King Street, where they encountered the King Street bridge. (Id. ¶¶ 40-41.) The King Street bridge is an old stone bridge, built in 1837, with narrow traffic tunnels and graffiti on the side. (Id. ¶¶ 12, 41.) Elizabeth took a photograph of the King Street bridge from the King Street median. (Id. ¶ 41.) Andrea and Elizabeth, their curiosity piqued, decided to see what was on top of the bridge. (Id. ¶¶ 41-42.)

Andrea and Elizabeth walked up a well-worn path that began at the King Street sidewalk and ran up the hill to the top of the bridge. (Id. ¶ 42.) There was litter along the way and a cut tree nearby. (Id.) There was a fence with an unlocked gate at the top of the path, but the area otherwise lacked any signs or warnings. (Id. ¶¶ 42-43.) On the opposite side of the fence were railroad tracks and more litter, but there was no fence on the other side of the railroad tracks. (Id. ¶ 43.) Andrea and Elizabeth had never lived near railroad tracks, nor had they ever ridden on high-speed trains. (Id. ¶ 36.) In light of their unfamiliarity with trains and the age of the King Street bridge, Andrea and Elizabeth believed the railroad tracks passing over the King Street bridge were abandoned. (Id. ¶¶ 36, 39, 44.) Thinking that the bridge would

2

offer a good vantage point to take photographs of the waterfront, they passed through the unlocked gate and sat down on the King Street bridge with their legs dangling off the side.  (Id. ¶ 45.)

Amtrak owns, operates, and maintains the railroad tracks that pass over the King Street bridge.  (Id. ¶ 11.)  Located in a densely populated area of East Greenwich, the King Street bridge is a narrow bridge, barely wide enough for the two sets of railroad tracks that pass over it, and lacks catwalks or handrails on either side.  (Id. ¶¶ 10, 13, 16.)  The railroad tracks that approach and leave the King Street bridge are curved.  (Id. ¶ 11.)  Amtrak's southbound trains approach the King Street bridge from around a corner, at high speed, with little audibility, and without giving a warning.  (Id. ¶ 32.)

As of October 2016, Amtrak had placed fencing along almost all of its railroad tracks in East Greenwich, with gates secured by a lock and chain.  (Id. ¶¶ 25-26.)  Moreover, warning signs were placed in close proximity to these gates.  (Id. ¶ 29.)  The unlocked gate that Andrea and Elizabeth used to access the railroad tracks on the King Street bridge only had one warning sign nearby, which faced away from those entering through the gate.  (Id. ¶ 35.)  This sign was written in railroad industry language that the public would not easily understand.  (Id.)  The signs warned railroad workers to contact train dispatchers to halt train traffic along the King Street bridge before they entered onto the bridge.  (Id.)

Andrea and Elizabeth were not the first pedestrians to access the tracks in the area around the King Street bridge; Amtrak's train engineers and maintenance workers had observed and met with people close to and on the tracks before. (Id. ¶¶ 17-18.) Additionally, suicide attempts, some fatal, had occurred on railroad tracks in East Greenwich in the twenty years prior to October 2016. (Id. ¶ 19.)

After sitting on the King Street bridge for approximately a minute, Elizabeth noticed a train round the corner approaching the King Street bridge at approximately ninety-five miles per hour. (Id. ¶¶ 46-47.) Elizabeth and Andrea began to run from the oncoming train, with Andrea running behind Elizabeth. (Id. ¶ 46.) Elizabeth managed to clear the tracks at the end of the King Street bridge, but Andrea was struck and killed by the train. (Id. ¶ 47.)

Following this tragic event, Andrea's parents, Carolina and Michael Penardo, and Elizabeth filed a Complaint alleging the following against Amtrak: intentional and willful conduct causing wrongful death (Count I); intentional infliction of emotional distress upon Andrea and Elizabeth (Counts II and III); negligent conduct causing wrongful death (Count IV); negligent infliction of emotional distress upon Andrea and Elizabeth (Counts V and VI); and loss of society and companionship by Carolina and Michael Penardo (Counts VII and VIII). (See generally id. at 10-18.)

## II.  Legal Standard

A court treats a motion for judgment on the pleadings much like a Rule 12(b)(6) motion to dismiss.  Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (citing Curran v. Cousins, 509 F.3d 36, 43-44 (1st Cir. 2007)).  "[T]o survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true . . . .'"  Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Because such a motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof."  R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006) (citations omitted).  "There is no resolution of contested facts in connection with a Rule 12(c) motion:  a court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point."  Id.  (citing Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988)).  Judgment on the pleadings is only appropriate when "it appears beyond a doubt that the nonmoving party can prove no set of facts in support of [his] claim which would entitle [him] to relief."  Rezende v. Ocwen Loan Servicing, LLC, 869 F.3d 40, 42

(1st Cir. 2017) (quoting Feliciano v. Rhode Island, 160 F.3d 780, 788 (1st Cir. 1998)).

III.  Discussion

In Rhode Island, "landowners[] owe a duty to 'maintain the[ir] property in a reasonably safe condition for the benefit of those persons who might come upon the land.'"  Bennett v. Napolitano, 746 A.2d 138, 141 (R.I. 2000) (alterations in original) (quoting Brindamour v. City of Warwick, 697 A.2d 1075, 1077 (R.I. 1997)). "This duty does not extend to trespassers, however."  Id. (citing Brindamour, 697 A.2d at 1077).  In the railroad context, "[i]t is the generally accepted rule that a railroad company owes no duty to a trespasser on its premises except to abstain from willful and wanton injury to him after he is discovered in a position of peril." Erenkrantz v. Palmer, 35 A.2d 224, 225 (R.I. 1944) (citing Boday v. New York, N.H. & H.R. Co., 165 A. 448, 448 (R.I. 1933)).  However, "a railroad is under no duty to keep a lookout for trespassers." Wolf v. Nat'l R.R. Passenger Corp., 697 A.2d 1082, 1086 (R.I. 1997) (quoting Zoubra v. New York, N.H. and H.R.R. Co., 150 A.2d 643, 645 (R.I. 1959)).

A.  Was Andrea a Trespasser?

The Court must first determine whether, viewing the pleadings in the light most favorable to Plaintiffs, Andrea was a trespasser at the time of the accident.  In Rhode Island, a "trespasser is '[o]ne who intentionally and without consent or privilege enters

6

another's property.'" Bennett, 746 A.2d at 141 (quoting Ferreira v.
Strack, 652 A.2d 965, 969 (R.I. 1995)). The Rhode Island Supreme
Court has "explained that a trespasser 'enters upon the property of
another without any right, lawful authority, or express or implied
invitation, permission, or license, not in performance of any duties
to the owner, but merely for his own purpose, pleasure or
convenience.'" Id. (quoting Ferreira, 652 A.2d at 969).

The Rhode Island Supreme Court has consistently held that people
walking on train bridges in factually analogous cases are
trespassers. In Wolf v. National Railroad Passenger Corporation,
twelve-year-old Brendan Houle ("Brendan"), was walking along a train
bridge at night with his father and older brother, when he was struck
and killed by an oncoming train. 697 A.2d at 1083–84. The bridge
spanned water, was open to the air, and had only a four-foot divider
between the tracks. Id. The group traversed a steep embankment
with a well-worn path to access the bridge. Id. at 1084. The path
had no warning signs about the danger of oncoming trains and no fence
to impede their access. Id. An oncoming train rounded a blind bend
at about seventy-five miles per hour approximately 1000 feet from
the end of the bridge. Id. Brendan ran on the bridge away from the
train, but was unable to escape before being struck and killed by
the train. Id. The court deemed Brendan a trespasser. Id. at 1085;
see also Zoubra, 150 A.2d at 644 (holding plaintiff was a trespasser
where he walked on a well-marked path that crossed railroad tracks,

7

with no warning signs, barriers, notices, or other forms of prohibition to public use); Boday, 165 A. at 448-49 (holding deceased was a trespasser where he had committed a misdemeanor by walking on the railroad bridge, which was open, spanned a river, had no footway or railing, and had no signs expressly prohibiting pedestrians).

Viewing the pleadings in the light most favorable to Plaintiffs, the Rhode Island Supreme Court's clear, albeit harsh, precedent plainly renders Andrea a trespasser under these facts. Despite the well-worn path leading from King Street to the King Street bridge, and other indications of public use, such as litter and a cut tree, Andrea was trespassing on the King Street Bridge. See Wolf, 697 A.2d at 1086 ("Even assuming the existence of a well-worn path leading up to the [bridge] (presumably indicative of some usage of the [bridge] as a pedestrian crossing) . . . Brendan was still trespassing on Amtrak's [bridge] at the time of the accident.") (citing Zoubra, 150 A.2d at 645); see also Boday, 165 A. at 449 ("The mere fact that a number of persons are in the habit of using a certain place as a crossing where there is no public right of passage does not constitute such place a public crossing or generally confer upon such persons a character or right other than that of trespassers.") (citation omitted); (Compl. ¶¶ 41-43). Nor does Amtrak's failure to secure the fence with a locked gate and post adequate warning signs change her status from that of a trespasser. See Wolf, 697 A.2d at 1083, 1086 (holding decedent was trespasser

despite no fence to impede access or warning signs); see also Zoubra, 150 A.2d at 644-45 (holding decedent was trespasser despite no impediments to public access or warning signs); Boday, 165 A. at 448 (declaring decedent trespasser despite no impediment to public access); (Compl. ¶ 42-43).

Plaintiffs argue that, for Andrea to be a trespasser, Amtrak must demonstrate that it did not give Andrea implied consent to enter the bridge. (Pls.' Mem. of Law in Opp'n to Def.'s Mot. for J. on the Pleadings ("Pls.' Mem.") 2-4, ECF No. 6-1.) They contend that a jury could find implied consent from the indications of public access, the unlocked gate, and Amtrak's indifference to prior access by the public. (Id. at 4.) But, as noted, Rhode Island law is clear that indications of prior public access do not change a trespasser's status on a non-public railroad right of way. See, e.g., Wolf, 697 A.2d at 1084, 1086; Zoubra, 150 A.2d at 644; Boday, 165 A. at 448-49. Indeed, the Rhode Island Supreme Court has noted that, "to conclude otherwise would be equivalent to holding that a landowner who does not aggressively exclude a trespasser thereby assumes an enhanced duty of care towards the trespasser . . . ." Bennett, 746 A.2d at 142 (holding plaintiff did not have implied consent to walk in a park, closed by city ordinance, where plaintiff had been observed walking by local police officers and park rangers over the prior decade). Thus, drawing all reasonable inferences in favor of

Plaintiffs, Plaintiffs have not alleged facts that would allow a jury to find implied consent, and Andrea was plainly a trespasser.

B.  Amtrak's Duty to Andrea

"Whether a duty exists in a particular situation is a question of law to be decided by the court."  Ferreira v. Strack, 636 A.2d 682, 685 (R.I. 1994) (citing D'Ambra v. United States, 338 A.2d 524, 527 (R.I. 1975)).  In order "[t]o prevail on a negligence claim, a plaintiff must show that the defendant owed the plaintiff a duty . . . ."  Lamarque v. Centreville Sav. Bank, 22 A.3d 1136, 1140 (R.I. 2011) (citing Berman v. Sitrin, 991 A.2d 1038, 1047 (R.I. 2010)).

Amtrak has the duty to refrain from wantonly or willfully injuring a trespasser only if and when it discovers her on railroad tracks.  See Erenkrantz, 35 A.2d at 224–25.  Thus, whether Amtrak had a duty vel non turns on whether Amtrak discovered Andrea before the accident.  Plaintiffs do not allege that Amtrak discovered Andrea on the King Street bridge[2]; such a failure to allege facts that the railroad knew of the trespasser's peril "is an indispensable averment because the law does not impose upon the defendant any duty toward the plaintiff as a trespasser . . . unless it has first discovered her in a position of danger."  Zoubra, 150 A.2d at 645.  Therefore,

---

[2] Plaintiffs recognize that their claim fails if this Court applies the trespasser rule, as set forth by the Rhode Island Supreme Court; in their Opposition, they state that, if the trespasser rule is applied in the instant case, "Defendant will not be responsible for Andrea Penardo's death even though she could not have gotten onto the tracks had Defendant secured this gate as it did other gates in the same area."  (Pls.' Mem. 6.)

Plaintiffs fail to state a claim upon which relief may be granted, and the Court need not address whether Amtrak's conduct rose to the level of willful or wanton injury.

Plaintiffs argue that, on the whole, their Complaint alleges that Amtrak operates its trains in the King Street bridge area in such a way as to never timely discover trespassers. See Curran, 509 F.3d at 43; (Pls.' Mem. 11-12). However, this theory does not advance Plaintiffs' claims. As harsh as it may be, under Rhode Island law, railroads have no duty to keep lookout for trespassers on their tracks. See Wolf, 697 A.2d 1082, 1086.

Plaintiffs alternatively aver that Amtrak is liable because the measures it employed to secure the area around the King Street bridge flouted federal law. (Pls.' Mem. 4-6; see also Railroad Trespassing, Vandalism, and Highway-Rail Grade Crossing Warning Device Violation Prevention Strategies 6, ECF No. 6-2). However, Plaintiffs fail to demonstrate that any failure to comply with federal law on Amtrak's part enhances the duty it has to trespassers or otherwise creates a private cause of action. Therefore, on the face of the pleadings, and drawing all reasonable inferences in Plaintiffs' favor, Amtrak never owed Andrea a duty and, accordingly, cannot be found liable for negligence as a matter of law.

C. Plaintiffs' Discovery Request

Plaintiffs, in their Opposition, argue that the Motion should be denied because they requested, but have not received, production

11

of the train's event recorder and front-facing camera.  (Pls.' Mem.
10-11.)  This information, they say, would shed light on "the train
engineer's conduct after discovering" Andrea and Elizabeth.  (Id. at
10.)  In several separate paragraphs of their Complaint, however,
Plaintiffs state that Defendant "operated its train at such a high
rate of speed and without warning that it knew its engineers and
crew would have insufficient time to discover, warn or sufficiently
slow the train to avoid striking members of the public on or near
the bridge and railroad tracks." (See, e.g., Compl. ¶¶ 50, 57, 63,
71, 77, 82.)  The Complaint does not allege that the engineer ever
discovered the girls; to the contrary, it repeatedly alleges that
Amtrak operated its trains in such a way that an engineer would never
make such a discovery.  (See generally id.)  Thus, drawing all
reasonable inferences in favor of Plaintiffs, the Complaint fails to
state a claim upon which relief may be granted.

D.  Whether To Certify Question to Rhode Island Supreme Court

Plaintiffs request that, if this Court deems Andrea a trespasser
on the King Street Bridge, the Court certify the question of whether
the trespasser rule applies to this case to the Rhode Island Supreme
Court. (Pls.' Mem. 6-7.)  The Rhode Island Supreme Court may answer
a certified question of law if "there are involved in any proceeding
before [this Court] questions of law of [Rhode Island] which may be
determinative of the cause then pending in [this Court] and as to
which it appears to [this Court] there is no controlling precedent

12

in the decisions of [the R.I. Supreme Court]." R.I. Sup. Ct. R.,

Art. I, R. 6(a). In pressing their argument, Plaintiffs aver that

the trespasser rule is harsh and illogical; Justice Flanders's

concurrence and Justice Goldberg's concurrence and dissent in Cain

v. Johnson, 755 A.2d 156 (R.I. 2000), show changing attitudes towards

the rule; The Restatement (Third) of Torts § 52 (Am. Law Inst. 2012)

classification of "flagrant" trespassers; and the instant case is

distinguishable from Rhode Island Supreme Court precedent, in

particular because Andrea did not subjectively intend to trespass.

(Pls.' Mem. 6–10.)

However, because Rhode Island precedent readily controls the

facts of this case, the Court finds no need to certify this question

to the Rhode Island Supreme Court. See R.I. Sup. Ct. R., Art. I, R.

6(a). In Mariorenzi v. DiPonte, Inc., 333 A.2d 127 (R.I. 1975), the

Rhode Island Supreme Court abolished the old common-law distinctions

of invitee, licensee, and trespasser, but in Tantimonico v. Allendale

Mut. Ins. Co., 637 A.2d 1056 (R.I. 1994), the court departed from

Mariorenzi and reestablished the old common-law rule for trespassers

(i.e., there is only a duty to not willfully or wantonly injure

trespassers when they are discovered). See Tantimonico, 637 A.2d at

1057, 1062–63 (reestablishing the old common-law rule for

trespassers only). The court has not disturbed the trespasser rule

since Tantimonico, nor has it adopted the Third Restatement's use of

the "flagrant" trespasser distinction. Additionally, a close read

of <u>Cain</u> reveals that the majority opinion reaffirms the trespasser rule under Rhode Island law, including its application in the railroad context, and the concurrences and dissents do not, in fact, lend much support to Plaintiffs' argument. <u>See</u> <u>Cain</u>, 755 A.2d at 161–62; <u>see generally</u> <u>id.</u> (Flanders, J., concurring); <u>id.</u> (Goldberg, J., concurring and dissenting).

Finally, Rhode Island Supreme Court precedent clearly establishes that Andrea's lack of subjective intent and knowledge about railroads are not factors for consideration. In <u>Wolf</u>, the court held that a train bridge is not an attractive nuisance. <u>Wolf</u>, 697 A.2d at 1086 ("[B]ecause the risk of injury from an oncoming train would be apparent to anyone who decides to walk along a train [bridge], we hold that as a matter of law the [bridge] was not an 'attractive nuisance.'" (citations omitted)). The "obvious danger" of the bridge in <u>Wolf</u> is the same danger presented by the King Street bridge here. There, the court deemed twelve-year-old children aware of this danger; it is doubtful that the Rhode Island Supreme Court would hold otherwise for sixteen-year-old Andrea. <u>See</u> <u>id.</u>; (Compl. ¶ 40). Thus, Andrea's lack of knowledge about railroads and subjective lack of intent to trespass are not germane to Amtrak's liability under Rhode Island law.

For these reasons, there is clearly controlling precedent on the issue presented by the facts of this case, and thus, certification of Plaintiffs' question to the Rhode Island Supreme

14

Court is unwarranted.  While the result in this case undoubtedly is harsh, the Court is bound by the Rhode Island Supreme Court's interpretation of Rhode Island law.

IV. Conclusion

For the reasons discussed above, Amtrak's Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (ECF No. 5) is GRANTED.

IT IS SO ORDERED.

_WESmith_

William E. Smith
Chief Judge
Date:  February 5, 2018